**RUSSELL, Admr. v REXROAD et**

Probate Court, Montgomery Co.

No. 76756-A. Decided Dec. 20, 1939.

John F. Edwards, Dayton, for administrator w.w.a.

Drewey H. Wysong, Dayton, for Edward M. Weaver.

Daniel Nevins, Dayton, for Howard C. Weaver.

**OPINION**

By WISEMAN, J.

This matter comes on to be heard on the application of the administrator to determine priority of liens and for an order of distribution, and also on the application of Edward M. Weaver, for an allowance of exemption in lieu of a homestead, under §11738, GC.

The record in this case shows that John H. Weaver died testate on July 21, 1926, and in his will which was probated on August 3, 1926, he gave a life estate to his widow in all of his property with power to consume, with a re-

mainder to his seven children share and share alike. The applicant, Edward M. Weaver is one of the seven children. On November 23, 1933, Howard C. Weaver took a judgment in the Common Pleas Court of Montgomery County, Ohio, against Edward M. Weaver and his wife, in the sum of $500 together with interest thereon, and perfected a lien on the real estate in which Edward M. Weaver held a vested estate in remainder. Subsequently, the land was sold by the administrator with the will annexed of the estate of testator, for the purpose of paying the debts of the estate. After all claims, costs and charges are paid, a surplus remains for distribution among the remaindermen, each share being approximately $350. The record shows that Edward M. Weaver is a resident of Ohio, is married, living with his wife, and is not the owner of a homestead. He claims that his share of the proceeds is exempt under §11738, GC. The estate holds a claim against Edward M. Weaver in the sum of approximately $100, and the administrator contends that no exemption can be set off against this claim. The judgment creditor claims the whole fund by virtue of his lien.

The jurisdiction of the Probate Court to hear and determine this matter is clear. §10501-53, GC, provides:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

The Probate Court had jurisdiction in the land sale proceeding, and in that proceeding is given the authority to determine the equities among the parties and the priorities of lien, by virtue of §10510-21, GC, which provides:

"Upon the hearing of the cause, if satisfied that all necessary parties defendant are properly before the court, and that the prayer of the petition ought to be granted, the court may determine the equities among the parties

and the priorities of lien of the several lienholders on such real estate, and order a distribution of the money arising from the sale, in accordance therewith. The court may in the same cause order contributions among all parties in interest."

Sec. 11728, GC provides:

"Such provisions with respect to exemptions apply to all courts in this state, including justices of the peace and mayors' courts, so that a person shall be entitled to all such exemptions in any case or proceeding, before any court or officer."

The court holds that the Probate Court has full authority to determine whether Edward M. Weaver is entitled to claim his portion of the proceeds as exempt in lieu of the homestead, under §11738, GC.

The court must first determine the right of the estate to deduct its claim from Edward M. Weaver's share of the proceeds derived from the sale of the real estate. Upon the death of John H. Weaver, Edward M. Weaver became vested with an estate in remainder in the real estate. His interest being divested by a land sale proceeding, now attaches to the surplus proceeds on hand for distribution. Can he claim his one-seventh interest in this fund as exempt against the claim of the estate?

In the case of **Skinner v Lehman's Heirs, 7 Ohio 431, (1834)**, the court had before it a different state of facts but laid down a principle of law on page 434 as follows:

"In equity and law, the instant an amount of money required to satisfy the claim his ancestor's estate had upon him, for the debt paid to Vanderslice, became his by virtue of his right to distribution, that instant it extinguished his claim for so much of his distributive share of the estate of his wife's father, and the same instant it extinguished and, in equity at least, satisfied the judgment against him,

452

which, under the decree was transferred to him, and his co-heirs, or those standing in their place."

In the case of **Keever v Hunter, 62 Oh St 616 (1900)**, the syllabus is as follows:

"When the lands of an intestate descend to his children, there being no personal estate for distribution, the interest of each child in the lands is subject to his indebtedness to the estate."

This opinion was written by Judge Shauck, who quotes from Woerner on page 619, as follows:

"It is not important whether, to secure equality in cases of this character, we adopt the doctrine of equitable set-off, as has been done by some courts, or, for that purpose, regard the debt as an advancement, as has been done by others. * * *

"The distinction between debts owing by an heir and advancements made to him by the intestate is sharply drawn; in some states debts so owing can not be deducted from the share of the heir in the real estate, and from the personal estate only by way of set-off, but the true principle seems to be that a debt owing by an heir constitutes part of the assets of the estate, as much as that of any other debtor, for which he should account before he can be allowed to receive anything out of the other assets; and it is so held in the United States."

In the case of **Serhant v Haker, 73 Oh St 250 (1906)** a question arose under the statute relating to cross-demands which existed between two persons. One debtor claimed a homestead exemption. The court on page 254 say:

"We are in the field of set-off rather than that of exemption."

On page 255 the court quotes the statute relative to cross-demands, and in commenting thereon say:

"The imperative language which follows is that the two demands must be deemed compensated so far as they equal each other. This is the rule of the civil law which admitted a set off in the name of compensation is the reciprocal acquittal of debts between two persons who are indebted the one to the other, or the extinction of debts of which two persons are reciprocally debtors to one another by the credits of which they are reciprocally creditors to one another. In such situation compensation takes place, and the respective debts are immediately extinguished by operation of law to the extent of their concurrence. Waterman on Set-offs, Sections 12, 13. The philosophy of the rule is that the balance left after deducting the smaller from the greater is the real debt owing. The rule is logical and does not seem to be inequitable."

While the facts presented in the case of Serhant v Haker, supra, were not similar to those in the case at bar, the same fundamental principle of law is applicable, which is that by operation of law the smaller claim compensates or extinguishes to that extent the greater claim.

In the case of **Lambright v Lambright, 74 Oh St 198 (1906)**, on page 204 the court say:

"It is conceded to be the general law, that the indebtedness of a legatee or distributee constitutes assets of the estate which it is the duty of the executor or administrator to collect, whether such legatee or distributee was indebted to the decedent before his death, or became indebted to the estate thereafter."

Again on page 205 the court say:

"It is undeniably the law of Ohio that an administrator or executor has the right and it is his duty, in the due administration of his trust, to retain out of the distributive share of an heir or legatee, and to hold and set off against the claim of a creditor indebted

to the estate, an amount—if so much there be, as shall equal the indebtedness of such heir, legatee or creditor to the estate; and this right and duty exists whether the heir, legatee or creditor was indebted to decedent at the time of his death or contracted a liability to the estate thereafter, in either event the right of the heir or legatee to participate in the distribution of the estate, or of the creditor to be paid his claim, is subject and subordinate to the debt of such distributee or creditor to the estate, and the latter, insofar as there are assets in the hands of the administrator applicable thereto, must first be paid and satisfied. And the duty and obligation resting upon the administrator or executor under such circumstances to withold and apply—to the extent of the debt—the amount that would otherwise have been payable to the heir, legatee or creditor, is in no manner controlled or affected by the solvency or insolvency of such heir, legatee or creditor."

The case just cited is regarded as a leading case in Ohio wherein the principle of law is laid down that it is the duty of the administrator or executor to retain from the distributive share of the heir or legatee, an amount which shall equal the indebtedness of such heir or legatee to the estate.

In the case of **Tobias v Richardson, 5 C. C. N. S. 74** (1904), affirmed by the Supreme Court without opinion in 72 Oh St 626, which was a suit in partition in which two of the heirs were indebted to the decedent, a question arose on the distribution of the proceeds as to whether the debts owing by the heirs should be deducted from their share of the proceeds derived from the sale of the land. On page 79 the court say:

"We think, under the circumstances of this case, that, by operation of law and with the implied consent of all the heirs, the debts of both John and Daniel were converted into and became advancements from the personal estate at the death of the ancestor; and we believe that these debtors should now be estopped to deny that such is the situation."

The court on page 80, in discussing the interest which the debtor heirs inherited in the estate of the decedent, who was their father, say:

"So that, in the case here, John and Daniel never in fact inherited each the one-sixth of these lands, but they did inherit so much less than one-sixth each as would enable their debts to the estate to be considered as advancements and equalized. Their shares were not definite and charge with a specific lien as a debt, but the whole land constituted a fund to equalize the advancements and be the source of an equal division to the heirs."

Again on page 80 the court in discussing the amount of the debt which should be deducted, say:

"At the death of the intestate, Daniel M. owed him, in principal and interest, to that day on his note, $154.81; and at the same time the amount of principal and interest on John's note was $52.65, and it was at that time that these debts became advancements, and at that time a quantum of interest in the land taken by inheritance became fixed. Counsel for cross-petitioners insist here, with emphasis and truly, that the right then fixed remains unchanged. These debts, as such, ceased longer to exist, and by inheriting a less share in the real estate than they would otherwise be entitled to, the debts were in effect paid. Upon what principle can either of these debts continue to bear interest? We are convinced that they should not do so."

Hence, we find the law to be that the moment the decedent died the debt of the heir by operation of law became extinguished to the extent that such debt could be set off against the interest of such heir, and the debt of the heir does not bear interest thereafter.

In the case of **Lockwood v Whitlesey,**

454

23 C. C. N. S. 241, (1912), which was a suit to quiet title, in which certain heirs of the intestate filed a suit against another heir who had inherited an undivided one-sixth interest in the real estate, the heir who was made party defendant was indebted to the intestate for an amount greater than the value of his interest in the real estate. The action was brought to remove the cloud on the title to the real estate by virtue of the· one-sixth interest which descended to the defendant heir. The court on page 242 say:

"He did inherit one-sixth of whatever estate the decedent left, and but for his indebtedness to her this would have given him a good title to an undivided one-sixth of this real estate, but having already received from her, as shown by his indebtedness, more than one-sixth of her estate, he inherited nothing in this ·real estate. That is the claim of the plaintiffs, and that we hold to be the law."

Again on page 243 the court say:

"But the fact that he is an heir at law of the intestate, and that there had not been, prior to the bringing of this suit, any adjudication that his inheritance was all covered by the amount of his indebtedness to the decedent, constituted a cloud upon the title of the plaintiffs, which cloud it is the proper office of a suit to quiet title to remove."

The court on page 244, in discussing the holding of the court below, say:

"The court below took the position that upon the death of. the intestate Grant T. Whitlesey became the owner of a one-sixth part of this land, and that this suit was to take from him ·that title and put it into the plaintiffs. That is not the purpose of the suit. The purpose of the suit is to have it determined that he never had an interest in the lands, and the facts establish that proposition."

Applying his principle of law to the facts in this case, this court holds that the moment the testator died the remainderman herein, Edward M. Weaver, did not become vested in an estate in remainder in the undivided one-seventh interest in said real estate, but his interest was an undivided one-seventh interest in remainder less his then indebtedness to said estate. The moment the testator died, that portion of Edward M. Weaver's interest in the estate which was equal to his indebtedness to said estate, was extinguished by operation of law. He never inherited that portion of said estate represented by his indebtedness to said estate.

As part of the new probate code there was enacted §10509-186 which provides as follows:

"When a beneficiary of an estate is indebted to such estate, the amount of the indebtedness, if due, or the present worth of the indebtedness, if not due, may be set off by the executor or administrator against any testate or intestate share of the estate to which such beneficiary is entitled."

The question arises as to the true interpretation of this section relative to the manner in which one claim is set off aganst the other. The court holds that this provision of the section is declaratory of the common law. It does not change the time at which the set off takes place. This section does not require the set off to be made as of the date the proceeds from the sale comes into the possession of the administrator. Under this section, the set off still takes place as of the date of the death of the decedent, and by operation of law that portion of the share of the beneficiary of the estate which is represented by such beneficiary's indebtedness to said estate, is extinguished as of the date of the death of the decedent.

Therefore, it is the duty of the administrator, under the provisions of §10509-186, GC, to withhold from Edward M. Weaver's share of the proceeds,

an amount equal to the indebtedness of Edward M. Weaver to the estate as of the date of the death of the testator. No interest is to be computed on said indebtedness after the date of the testator's death.

The judgment creditor of Edward M. Weaver is not entitled to any portion of the share of Edward M. Weaver as against the claim of the estate, for the reason that the lien which the judgment creditor perfected on the land did not bind the undivided one-seventh interest which Edward M. Weaver ordinarily would have taken as remainderman, but such lien only bound the interest of Edward M. Weaver after his debt to the estate was extinguished.

After his debt to the estate is extinguished, there will still remain in the possession of the administrator approximately $250. Edward M. Weaver claims this money as exempt in lieu of a homestead, under §11738, GC, as against the claim of his judgment creditor. The contention is made by counsel for the judgment creditor that the proceeds derived from the sale of the real estate is money due from the administrator to Edward M. Weaver, and that such money can not be claimed as exempt under this section. §11738, GC, provides:

"Husband and wife living together, a widow(er) living with an unmarried daughter or minor son, every widow, and every unmarried female having in good faith the care, maintenance and custody of a minor child or children of a deceased relative, resident of this state, and not the owner of a homestead, in lieu thereof, may hold exempt from levy and sale, real or personal property to be selected by such person or his attorney, before sale, not exceeding five hundred dollars in value, in addition to the amount of chattel property otherwise by law exempted. Such selection and exemption shall not be made by the debtor, or his attorney, or allowed to him from money, salary or wages due to him from any person, partnership or corporation, nor shall any passenger automobile be selected

as exempt. No personal property shall be exempt from execution on a judgment rendered for the purchase price or any part thereof."

The money which is claimed to be exempt is not money due from the administrator as a debtor to Edward M. Weaver as a creditor, but is a portion of a fund derived from the sale of land in which Edward M. Weaver held a vested interest in remainder. His interest was divested by the land sale proceeding. He now holds an interest in the surplus proceeds derived through the land sale proceeding. The court in the case of Berlin Heights Banking Co. v Felton, 39 Oh Ap 289 (1930), wherein the same contention was made, held:

"We can not adopt this view. The money arising from a sale of real estate under order of court to satisfy a judgment lien is not money due the debtor from a person, partnership, or corporation within the meaning of §11738, GC."

The contention is made by counsel for the judgment creditor that Edward M. Weaver should have claimed his exemption before the sale of the real estate, and cites in support thereof, Frost v Shaw, 3 Oh St 270, and Butt v Green, 29 Oh St 667. The right to an exemption in lieu of a homestead did not arise in those cases. The claim for exemption was made under the section which exempts goods and chattels from execution, and therefore these authorities do not apply to the case at bar.

While the court does not find any reported case in Ohio in which this precise question has been decided, there are authorities which by analogy lend assistance in determining the issue before the court. In the case of McConville v Lee, 31 Oh St 447 (1877), which was an action to foreclose a mortgage lien, the mortgagor, out of the surplus after satisfaction of the mortgage debt, was allowed an exemption in lieu of a homestead although no demand was made until after the sale was confirmed and the money was ready for distribution. The court on page 450 say:

"Manifestly the case it not within the words of this provision. They are that the selection shall be made 'at any time before sale.' But there was no opportunity to make the selection before sale. The mortgage embraced the five lots and the order was to sell all, and after the payment of costs, apply the proceeds first to the satisfaction of the mortgage debt. Until that debt was satisfied, there was no right to any exemption. When that debt was satisfied, we think there was such right."

And on page 451 the court say:

"In holding that this claim for exemption ought to be allowed, we follow, moreover, the well-settled rule, that the statutes on this subject should be liberally construed in favor of the claimant."

See also: **Kelly v Duffy, 31 Oh St 437, 446**, and **Jackson v Reid, 32 Oh St 443**.

In the case of **Niehaus v Faul, 43 Oh St 63 (1885)**, which involved an action to foreclose a mortgage lien, the court held:

"The right to demand an allowance in lieu of a homestead under Rev. Stats, §5441, out of the proceeds of the second sale, is to be determined by the state of facts at the time the surplus arising from such sale was finally disposed of by the court.

"That by the sale and confirmation of the homestead tract, F. was divested of her ownership therein, and was no longer the owner of a homestead, and if the surplus, arising from the first sale, was insufficient to satisfy her demand, she was entitled under §5441 to have the same satisfied out of the surplus arising from the sales of the other lands, although not entitled to a homestead therein."

·This case was followed and approved in **Fry v Smith, 61 Oh St 276**.

In the case at bar, Edward M. Weaver was not in a position to claim an exemption before the sale of the lands of the decedent in which he had a vested remainder. His interest was subject to be and was divested by the land sale proceeding. The value of his interest in the estate was unknown until a sale had taken place and the debts of the estate had been liquidated. His application for an allowance of an exemption in leu of a homestead, under §11738, GC, was filed within time.

Reasoning by analogy, and applying the principles of law laid down by our Supreme Court in actions to foreclose mortgage liens to the facts presented in the instant case, the court conceives the true rule to be: An heir at law or devisee who holds a vested interest in land which is divested by a land sale proceeding for the purpose of paying the debts of the decedent, wherein a surplus remains for distribution to the heir at law or devisee, may claim $500 of said fund as exempt in lieu of a homestead, under §11738, GC, as against a judgment creditor who has perfected a lien on the interest of such heir or devisee in said land; and such demand for exemption may be made at any time before distribution of the proceeds. Since the share of Edward M. Weaver in the surplus proceeds derived from the sale of the land, after deducting his indebtedness to said estate, amounts to less than $500, the court orders said amount distributed to Edward M. Weaver under his claim for an exemption in lieu of a homestead.

The costs of this proceeding are taxed against the estate.

Counsel will draw the proper entry.